IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00130-RMR

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DANIEL LARSON,

Defendant.

---

REPORTER'S TRANSCRIPT

Status Conference

---

Proceedings before the HONORABLE REGINA M. RODRIGUEZ, District Judge, United States District Court for the District of Colorado, commencing on the 18th day of September, 2025, in Courtroom A901, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Government:
JASAND MOCK, United States Attorney's Office, 1801 California Street, Suite 1600, Denver, CO 80202

For the Defendant:
JARED WESTBROEK, Office of the Federal Public Defender, 633 17th Street, Suite 1000, Denver, CO 80202

ALSO PRESENT: JEFFREY FEILER

Reported by SADIE L. HERBERT, RPR, RCR, 901 19th Street, Denver, CO 80294, (303)335-2105

P R O C E E D I N G S

(Proceedings commenced at 11:01 a.m.)

THE COURT: Good morning, everyone, please be seated. We are here in 24-cr-00130, United States v. Larson.

Could I have appearances of counsel, please.

MR. MOCK: Good morning, your Honor. This is Assistant United States Attorney Jasand Mock on behalf of the United States.

THE COURT: Good morning.

MR. WESTBROEK: Good morning, your Honor, Jared Westbroek on behalf of Mr. Larson. I'll note that Mr. Feiler is behind me.

THE COURT: Good morning, Mr. Feiler. And I do note we have Mr. Larson there by video.

Can your hear us, Mr. Larson?

THE DEFENDANT: Yes, I can.

THE COURT: If at any point in time you can't hear, please just let me know. Or if I can't hear you, I won't be able to hear you say anything, but wave your hand or give me some sort of signal that you're not able to hear or see what's going on, okay?

THE DEFENDANT: Okay.

THE COURT: So we have a couple of things to discuss here today. The first is that the Court has received the report from the medical facility where Mr. Larson is currently

being detained and treated.

MR. WESTBROEK: Your Honor, may I interrupt for one moment.

THE COURT: Yes.

MR. WESTBROEK: I filed a motion yesterday to close these proceedings to the public. I would like to get that ruled on before we have any substantive discussion about what we're doing today.

THE COURT: With regard to the motion that you filed pursuant to our local rule, that needed to have beem filed with sufficient time that the public could file its objections. That requires at least three days. Additionally, the motion that was filed was filed under seal, so the proper notice to the public was not given. And therefore, the Court will deny that motion, as it does not comply with this district court's rule, nor does it substantially comply with and meet the standards for closure in full under the Supreme Court precedent.

However, to the extent we will be dealing with and discussing -- although I don't know that that will be necessary in this particular instance, because this is not an evidentiary hearing -- to the extent we will be dealing with Mr. Larson's medical condition and personal medical information, the Court would seal the record as it relates to those issues.

Now, the second thing that we have to deal with in

this hearing is the issue with regard to counsel in this matter. That will, by necessity, require the disclosure of attorney-client communications. And for that the Court will conduct an ex parte hearing on those issues and will ask Mr. Mock to step out. And we'll close the courtroom and seal the record as it relates to that.

I will also note that that there has been no one who has called in, and therefore, we will not open the public line. We normally do not have a public telephone line available for hearings when the courtroom is open. So it is open to the public, but I will also note for the record that there is no one present other than Mr. Mock, Mr. Westbroek, Mr. Feiler and Mr. Larson by video. The other people present in the courtroom are members of this court's staff.

Anything further on that, Mr. Westbroek?

MR. WESTBROEK: No, ma'am.

THE COURT: Just so we are all on the same page, this court received a forensic psychological report dated August 22, 2025. In that report, the recommendation was made that the Court grant an additional 120 days for the purpose of 18, U.S.C., Section 4241(d)(2)(A), as it was the expert's -- expert opinion that Mr. Feiler was not yet fully competent to proceed in this matter -- I'm so sorry, I was looking at you, Mr. Feiler, but I don't believe there has been any finding with regard to your competency in this matter, so my apologies, and

I will withdraw that statement -- that Mr. Larson is not yet fully competent for purposes of trial, but that it is reasonably believed that he may be restored to competency. And during the course of his stay in treatment, he has made progress to that end and that the additional 120 days, while it does not guarantee a restoration of competence, the evaluator believed that it was reasonably likely.

I asked for positions of the parties. The government has agreed and Mr. Westbroek, on behalf of Mr. Larson, has objected. So Mr. Westbroek, I think we'll start with you. Could you please explain to me the Defendant's position and why you believe that the 120-day extension at this juncture is not appropriate.

MR. WESTBROEK: Yes, ma'am. The conditions that Mr. Larson is currently suffering from, autism spectrum disorder and unspecified schizophrenia and another psychotic disorder, most of these are long-term, lifelong ailments that will not go away. And it seems to me that his likelihood of being restored is significantly limited.

I do disagree with the conclusion of the evaluator, based on my own conversations with Mr. Larson, I was there this past Monday -- excuse me, Tuesday. A lot of the issues with Mr. Larson that are described throughout the report as to why he is not competent still persist. Those have not alleviated other the three different sessions I have had with Mr. Larson,

on the last, I guess, 240 days. Based on that, I would like to have my own evaluator evaluate Mr. Larson and have an evidentiary hearing as to whether it is likely in the foreseeable future that he will be restored. I think that an evidentiary hearing is necessary.

THE COURT: All right. You have asked for two things, and let's break that down.

First, with regard to your request to have another person evaluate Mr. Larson, do you have someone that can complete that within the next 40 days?

MR. WESTBROEK: I'm sure I could hire someone that would, yes, ma'am.

THE COURT: And they could evaluate him at the facility where he is?

MR. WESTBROEK: Likely so.

THE COURT: No, likely so is not a sufficient answer.

MR. WESTBROEK: Your Honor, not having this set for an evidentiary hearing, I have not hired anybody at this point. I will be able to find somebody that can travel to Missouri.

THE COURT: Well, I presume you knew this was going to be your request before me today, that you did nothing to identify whether you could get that person and what the time frame might be, what that would look like.

MR. WESTBROEK: Your Honor, the Court would have to set an evidentiary hearing before I believe that duty would be

triggered. Without any -- well, I guess, I'll back up.

What I anticipated, what I have experienced in the past and what talking to other colleagues have also experienced is that the Court would set an evidentiary hearing, which would require me to hire an expert at that point. Since that has not happened, I have not hired anybody at this point.

THE COURT: That wasn't really my question. My question is, do you have somebody that you can get. Usually, we call people in advance, we say, hey, can you do this if it's ordered, would you be available, could you go to -- is it Missouri, here?

MR. WESTBROEK: Yes, ma'am.

THE COURT: And evaluate this person, how long do you think it would take, can you get me a report; right?

MR. WESTBROEK: Yes, ma'am. I would be able to do that. I would be able to find somebody.

THE COURT: All right. Mr. Feiler, you are very patiently waving your hand at me back there.

MR. FEILER: Judge, I'm only going to interrupt when points are necessary to be made. I want the Court to know that the trust has hired Dr. Mark Mills. Dr. Mark Mills is a Harvard educated psychiatrist MD and he is also a Stanford educated juris doctor. He is -- for about 50, 60 years has done evaluations of this sort, and he is ready to go as soon as the Court would permit me to let him go.

THE COURT: Where is Mr. Mills?

MR. FEILER: Mr. Mills is in Springfield, Missouri.

THE COURT: He is --

MR. FEILER: I'm sorry, Dr. Mills --

THE COURT: Sorry, I confused you. Dr. Mills.

MR. FEILER: Dr. Mills lives in North Carolina, however frequently travels all over the country and was ready and is ready to go to Springfield, Missouri, just so the Court knows.

THE COURT: Do you have a CV for Dr. Mills that is readily available? I'm assuming it might be available online, but if you have that and you can provide that.

And Dr. Mills, is he a psychologist or psychiatrist?

MR. FEILER: Psychiatrist, MD, Harvard. And I think that I could probably -- if I can use my phone -- tap out a text message and probably have it sent over here shortly.

THE COURT: Thank you.

Mr. Westbroek, is there any reason you are aware of that you would not use the doctor that Mr. Feiler has identified?

MR. WESTBROEK: It's certainly possible, your Honor. We would have to contact and talk to him ourselves before we could get a contract established.

THE COURT: All right. That deals with the issue of whether or not there would be an evaluation. I would certainly

order that it be completed in 40 days or less and that the Court be provided with the report on that 40th day, so the time is short.

Is there any objection to that, Mr. Mock?

MR. MOCK: No objection to the evaluation, your Honor.

THE COURT: What about with regard to the evidentiary hearing?

MR. MOCK: Your Honor, with regard to the evidentiary hearing, if what defendants are seeking is discharge from the commitment under 4241, the general provisions of 4247(h) provide that such motions may not be filed any sooner than 180 days from the Court's order that continuing treatment and commitment is appropriate. In this case, I believe the Court's order on that issued on April 25th, which would set the date for a motion by defense for such a hearing on October 22nd. That of course does not preclude the Court, however, from ordering an evidentiary hearing on any basis.

THE COURT: All right. Well, I understand why Mr. Westbroek may be seeking an evidentiary hearing at this moment. I do believe that it is somewhat premature, in as much as we don't know what said report may or may have not find at that point in time, what the parties may or may not agree to given that evaluation by a doctor of the defense's selection. So I'm not precluding or indicating that we would not have an evidentiary hearing.

What I will order is that there will be a -- that the Court will allow defendant to have Mr. Larson evaluated by another psychiatrist. And I will require that it be by a psychiatrist, because it is clear that Mr. Larson is taking medication as part of his treatment and it appears from the report that this court has received from the evaluator in Missouri that that medication is an important part of the treatment and the potential return or restoration of competence. Therefore, a psychologist evaluation would be insufficient and would not be able to address the psychotropic medication issue, as well as the psychiatric issues.

So the Court will allow an evaluation by a psychiatrist designated by the defendant, Mr. Larson. The evaluation and report must be completed at the facility where Mr. Larson is currently held in Missouri. Defendant is instructed to coordinate with the BOP officials at the facility in Missouri for the doctor to meet with and evaluate Mr. Larson at that facility. He is not to be removed from the facility. Again, the evaluation must occur at the facility. Mr. Larson will not be removed from the facility.

The Court will take under consideration the request for evidentiary hearing on the issue of whether or not Mr. Larson can or will -- is reasonably likely to be restored to competency. But I will withhold ruling on that and ordering an evidentiary hearing until I have received the report and all

counsel has had an opportunity to likewise receive the report and review it.

I will instruct counsel for the government and the defendant to meet-and-confer once that report has been received and file a notice with this court -- or call it a status report, if you prefer -- as to what the positions are of the parties within five days of the receipt of that report.

Anything further on that issue?

MR. MOCK: Your Honor, if I may, with respect to the designation of a psychiatrist chosen by the defendant, I believe it's probably implicit in your Honor's ruling, but I take it that would be subject to compliance with any security protocol requirements of the BOP at the facility.

THE COURT: Yes, certainly.

MR. MOCK: Thank you, your Honor.

THE COURT: Anything further, Mr. Westbroek?

MR. WESTBROEK: No, ma'am.

THE COURT: So with that, I think we have dealt with the issues pursuant to 18, U.S.C., 4241 and those that Mr. Westbroek has raised, we have addressed those. I think what now remains is the issue with regard to documents and requests that Mr. Feiler has filed in this case regarding counsel and the appointed counsel versus counsel vis-a-vis a guardianship. And so this certainly does address and will require the Court to address confidential attorney-client

communications. And therefore, at this point in time, the Court, given the sensitive nature of these issues, it may also involve particular sensitive issues related to Mr. Larson's medical and mental health history and status. The confidence and confidentiality of these issues, in this instance and at this stage in the proceedings, the Court specifically finds outweighs any interest the public may have in these matters, and therefore, the Court will close the courtroom at this time. And I will excuse Mr. Mock so that the Court can continue with this ex parte.

MR. MOCK: Good day, your Honor.

THE COURT: Thank you.

(Continued on next page)

(Pages 13 through 32 SEALED)