**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 2024-cr-0130-RMR-1

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**DANIEL LARSON,**

Defendant.

---

**COURT REPORTER'S TRANSCRIPT**
Change of Plea Hearing

---

Proceedings before the HONORABLE REGINA M. RODRIGUEZ, Judge of the United States District Court for the District of Colorado, commencing on the 9th day of April, 2026, in Courtroom A901, United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**For the Plaintiff**:
**JASAND MOCK**, U.S. Attorney's Office, 1801 California Street, Suite 1600, Denver, Colorado, 80202

**For the Defendant**:
**JEFFREY FEILER**, 7685 Southwest 104th Street, Suite 200, Miami, Florida, 33156

**CHAD OXMAN**, Oxman Oxman, PC, 2025 York Street, Denver, Colorado, 80205

Afternoon Session - April 9th, 2026

*******

(The following proceedings commenced in open court at the hour of 3:08 p.m., with all parties present and the defendant appearing in custody :)

*******

THE COURT: All right. Good afternoon, everyone. Please be seated.

We're here today in Case Number 24-cr-130, United States v. Larson.

Could I have appearances, please.

MR. MOCK: Good afternoon, Your Honor. Assistant United States Attorney Jasand Mock on behalf of the Government.

THE COURT: All right. Thank you.

MR. FEILER: Good afternoon, Your Honor.

Jeffrey Feiler on behalf of Daniel Larson, who's present here today for change of plea, and along with us is Attorney Chad Oxman, who is his legal guardian.

THE COURT: All right. Thank you.

The record will reflect that this Court is aware that Mr. -- is it Oxman?

Could you spell it, please.

MR. OXMAN: O-x, as in X-ray, -man.

THE COURT: All right. Thank you.

That Mr. Oxman has been appointed as Mr. Feiler's --

sorry. Not Mr. Feiler -- Mr. Larson's legal guardian in this matter -- or, actually, not in this matter but by the Denver Probate Court.

All right. So, Mr. Feiler -- or, Mr. Larson, would you please rise, and Ms. Myhaver will swear you in.

(The defendant was duly sworn.)

THE COURT: All right. So with that, it's my understanding that pursuant to a plea agreement, Mr. Larson wishes to enter a plea of guilty to Count 6 of the indictment, charging a violation of Title 18, United States Code § 875(c), interstate communication of threats.

Is this correct, Mr. Feiler?

MR. FEILER: That is correct, Your Honor.

THE COURT: All right.

Now, the matter is before the Court for a change of the defendant's plea for consideration of an advisement with respect to the parties' proposed plea agreement under Rule 11 and for re-arraignment under Federal Rule of Criminal Procedure 10.

For the record, the Court notes that it has received and reviewed the proposed plea agreement and the statement by Defendant in advance of the plea of guilty.

Now, the Court has, as I've indicated, reviewed the plea agreement. That document has been marked as Court Exhibit 1.

Mr. Larson, have you had a chance to review this document?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: And did you get a chance to talk to your lawyer about it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

And was your guardian also present in those conversations?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. And when you talked to Mr. Feiler about this agreement, did he answer all your questions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And it looks like on the last page of this document, that is your signature there.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Does that mean that you read this document; you understand it, and you agree to its terms?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

There's also a document that's entitled Statement by the Defendant in Advance of Plea of Guilty that has been marked at Court Exhibit 2.

Did you also get a chance to read this document?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you read the whole thing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you also talk to Mr. Feiler about it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Was Mr. Oxman present?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And did Mr. Feiler answer all of your questions about the document?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

Now, on the last page here, it appears to have your signature.

Is that, in fact, your signature?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And does that signify that you read this document; you understand it, and you agree to it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. Mr. Larson, I know that you have gone through these documents with your lawyer and your guardian was present as well, but, as the judge, I have an independent obligation to make sure you understand what your rights are and what you would be giving up by pleading guilty in this matter, that is the -- your legal rights that you would be giving up,

okay?

So in order to do that, I need to ask you a few questions. They're not difficult questions, but I do need to ask you questions. As a defendant in a case, you're not required to answer any questions, but in order for me to make sure you understand, I do need to ask you a few questions, okay?

So are you willing to waive your right to remain silent for purposes of this hearing only in order to answer my questions and complete this hearing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. So I just want to remind you that you took an oath to tell the truth. If your answers today are not truthful, that could cause a separate charge to be brought against you for perjury or false statements.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. So, sir, what is your full name?

THE DEFENDANT: Daniel Robert Larson.

THE COURT: Okay. And how old are you?

THE DEFENDANT: 28 years old.

THE COURT: And what level of school have you completed?

THE DEFENDANT: Some college, but all through high school.

THE COURT: All right.

And what kinds of college classes did you take?

THE DEFENDANT: I took, like, music and stuff like that.

THE COURT: Okay.

Where did you go?

THE DEFENDANT: I went to -- it was LA Film School.

THE COURT: Okay.

And are you able to read and write in English?

THE DEFENDANT: Yes.

THE COURT: Okay. Are you currently taking any kind of drugs, medication, alcohol or anything of that nature that would interfere with your ability to understand these proceedings and the legal consequences?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay.

Mr. Feiler, are you aware of any reason why the Court should not continue with this hearing?

MR. FEILER: No. No reason, Your Honor.

THE COURT: All right.

Based on the statements of the defendant, my conversations with him and the representations of Counsel, I do find that Mr. Larson is in full possession of his faculties and

is competent to proceed. I also rely on the prior reports that this Court has reviewed from medical professionals.

Now, Mr. Larson, you were charged by indictment on April 25, 2024.

Have you had a chance to review that indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand the charges that have been brought against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

Mr. Feiler, would you please outline for the Court and your client the essential terms of the plea agreement.

MR. FEILER: Yes, Your Honor.

May I remain seated while I do so?

THE COURT: You may.

MR. FEILER: Okay. The essential terms of the plea agreement are that he will be pleading Count -- guilty to Count 6 of the indictment with the understanding that eventually the Government will dismiss all of the other counts of the indictment; that, of course, the Court will -- will review the presentence investigation report and establish an advisory guideline range.

The Government has agreed to not oppose a motion for a variant to a time-served guideline. And those are the general plea -- if you have any other questions, of course, I

will -- but those are the general terms.

THE COURT: All right.

Mr. Mock, do you agree with this description of the plea agreement?

MR. MOCK: I would add, Your Honor, that under the plea agreement, Mr. Larson will waive certain appellate and collateral attack rights, as explained in more detail in that agreement, and that he is also agreeing to abandonment of certain property, particularly a cell phone, specified in the agreement.

THE COURT: All right. Thank you.

Now, Mr. Larson, is this consistent with your understanding of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. So I want to talk to you for a moment about your rights as a defendant in a criminal matter. You -- I know that you have reviewed this with Mr. Feiler and Mr. Oxman, but I, as the judge, have an independent duty to talk to you about these rights that you would be waiving by pleading guilty in this matter, okay?

So you do have a constitutional right to a trial by jury. At trial, the Government has the burden of proof. That means they have to prove your guilt beyond a reasonable doubt. At trial, 12 jurors would each need to find that you are

guilty.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At trial, you do not have to prove that you are innocent. In fact, it's the opposite. The Government has to prove you are guilty. You are presumed to be innocent. You can call witnesses. You can testify yourself, if you'd like to do so, but you are under no obligation to do that, again, because it's not up to you to prove you're innocent. It's up to the Government to prove you are guilty.

Do you understand this?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If I accept your plea this afternoon, you are going to be waiving that right to a jury trial.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you wish to give up that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

As Mr. Mock mentioned, in your plea agreement, you are also agreeing to waive certain appellate and collateral rights. If you were to go to trial and you were convicted, you would have the right to appeal your conviction and any sentence that I impose. If I accept your plea agreement, you will be giving up that right to appeal your conviction as well as the

sentence, except in very limited circumstances.

If I accept your plea agreement, you can only appeal the sentence that I impose if it, one, exceeds the maximum sentence provided by statute; two, if it exceeds the top end of the advisory guideline range applicable to an offense level of 17; or if the Government appeals the sentence.

Under the plea agreement, you're also waiving the right to challenge your conviction and sentence and any collateral attack, including in a motion under 28 U.S.C. § 2255. You may have heard that referred to as a habeas corpus petition.

You are not prohibited, however, from seeking relief, one, where there has been a retroactive change in the sentencing guidelines or sentencing statute; two, where you were deprived of effective assistance of counsel; or, three, where you were prejudiced by prosecutorial misconduct.

Under the terms of the plea agreement, you waive the right to appeal your sentence upon revocation of supervised release, except under certain circumstances. You're also waiving your right to appeal the denial of any motion or modification -- or of any motion for modification of imposed sentence where the denial rests in any part on the Court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

Do you understand these rights to appeal that you are

giving up?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you wish to waive those rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, the factual basis for your guilty plea is set forth in the agreement, beginning at Page 5 of the agreement.

Have you had an opportunity to review the facts as stated in the agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So in a moment, I'm going to ask you whether or not those facts are true, and the reason why I'm asking you this at this stage is that I, as well as the probation department and others, may be relying upon the facts as set forth in this document.

So if you tell me later, three weeks from now, at the sentencing or otherwise, oh, no, these facts really weren't true, I'm going to say to you, Mr. Larson, I asked you at the hearing, and you swore to me that these facts were true.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

So take a look at the facts as set forth in the agreement and let me know whether or not they are actually true.

THE DEFENDANT: Yes, Your Honor.

THE COURT: So those facts are indeed true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. Is the Government satisfied with the factual basis as set forth in the plea agreement?

MR. MOCK: Yes, Your Honor.

THE COURT: All right.

Mr. Feiler, may the Court rely on the factual basis as set forth in the plea agreement?

MR. FEILER: Yes, Your Honor.

THE COURT: All right.

So now let's talk about the charge to which Mr. Larson will be pleading guilty and the possible penalty for that charge.

Mr. Mock, would you please inform Mr. Larson of the charge to which he will be pleading guilty, and also please state the elements of that charge as well as the maximum penalty for the charge.

MR. MOCK: Yes, Your Honor.

Mr. Larson, will be pleading guilty to one count of violating 18 U.S.C. 875(c), interstate communication of threats.

The elements of an 875(c) violation, as set forth by the Tenth Circuit in the pattern jury instructions, are:

First, the defendant knowingly transmitted a communication containing a threat to injure the person of another; second, the defendant transmitted the communication with the intent to make a threat but with knowledge that the communication would be viewed as a threat; and, third, the communication was transmitted in interstate or foreign commerce.

A threat is a serious statement expressing intent to instill fear which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from mere political argument, idle talk, exaggeration or something said in a joking manner. It is not necessary that the defendant intended to carry out the threat nor is it necessary that the defendant had the ability to carry out the threat.

The potential penalties for violating 18 U.S.C. 75 -- 875(c) is not more than five years imprisonment, a maximum term of supervised release of three years, a maximum fine of $250,000 and a $100 mandatory victim fund assessment fee.

THE COURT: All right. Thank you, Counsel.

All right. Mr. Feiler, have you reviewed and explained to Mr. Larson the sentencing computation provisions contained in the plea agreement?

MR. FEILER: Yes, Your Honor.

THE COURT: All right.

Would you review those for the Court and your client.

MR. FEILER: Yes, Your Honor.

THE COURT: It's my understanding that the estimated total offense level in this matter is 17, after a three-level decrease for acceptance of responsibility, which the parties believe would be applicable in this matter.

The parties also, at this time, believe Mr. Larson's criminal history category would be 2. The advisory guideline range resulting from an offense level of 17 and criminal history category 2, is 27 to 33 months. However, the estimated offense level could conceivably result in a range from 24 months to 64 months of imprisonment.

Is that consistent with your understanding, Counsel?

MR. FEILER: That is.

THE COURT: All right.

And, Mr. Larson, I want to be clear with you that this is only an estimate that is based on the information that the attorneys have at this time. It is possible that the presentence investigation report could contain additional information that might change that calculation.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And while it doesn't happen often, it does happen from time to time. This in and of itself would not be a basis for you to withdraw your plea of guilty in this matter.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

Additionally, although it's the Court's responsibility to determine what the advisory guideline range is, once that has been established, it becomes one of the factors that the Court considers, along with the factors set forth in 28 U.S.C. § 3553(a).

At the end of the day, the sentence that this Court imposes may be within that guideline range. It may vary downward, below that guideline range and could even vary upward to the top end of the guideline range.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

All right. Additionally, if you are sent to prison on this particular charge, when you are released, there will be certain conditions attached to your release. That is called supervised release. Some of the conditions are that you may not commit any new crimes; you may not possess any illegal substances, and you may not possess any firearms.

Do you understand that if you violate any of these conditions of release, your supervised release could be revoked, and you could be returned to prison for all or part of the remaining term of supervised release?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Additionally, there are other consequences that attach to a plea of guilty to a felony here today. By pleading guilty, you may lose valuable civil rights, which would include the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm of any kind.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. As Mr. Mock indicated, under the terms of the plea agreement, you're also agreeing to abandon to the United States the telephone that is identified in the agreement.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

All right. So, Mr. Larson, do you have any questions about any of the information that we have discussed here today?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone attempted in any way to threaten you, your family or someone you care about in order to get you to plead guilty today?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you satisfied with the representation your lawyer has provided to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you believe he's fully advised you concerning your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Having in mind everything that we have discussed regarding your plea of guilty, the rights that you will be giving up and the maximum sentence of five years that you could receive, do you still wish to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, other than re-arraigning Mr. Larson, do you agree that the Court has complied with the requirements of Rule 11?

MR. FEILER: Yes, Your Honor.

MR. MOCK: Your Honor, I believe the Court has complied. There is one item I might like to clarify for the record, please.

The Court alluded to prior medical records that Your Honor is aware of. I thought, perhaps, that we might confirm with Mr. Larson that the medical regimen remains essentially the same, that he is current on that medical regimen.

THE COURT: All right. That is a fair request.

Is that, indeed, accurate? Are you currently still taking the medications as prescribed by --

THE DEFENDANT: Yes --

THE COURT: -- the physicians?

THE DEFENDANT: -- Your Honor.

THE COURT: All right.

MR. MOCK: Nothing further from the Government, Your Honor.

THE COURT: All right.

With that, the Court will grant Mr. Larson's request to withdraw his plea of not guilty to Count 6 of the indictment.

Mr. Mock, would you please re-arraign Mr. Larson.

Mr. Larson, if you will please rise for the re-arraignment.

MR. MOCK: Mr. Larson, you've been indicted in a seven-count indictment. Count 6 of that indictment is that on or about December 25, 2023, in the State and District of Colorado, the defendant, Daniel Larson, did knowingly transmit in interstate and foreign commerce a communication containing a threat to injury the person of another, namely, a particular Federal Bureau of Investigation special agent, all in violation of Title 18, United States Code § 875(c).

Mr. Larson, how do you plead to Count 6 of the indictment?

THE DEFENDANT: Guilty.

THE COURT: All right. Thank you, Judge. Counsel.

You may be seated, Mr. Larson.

With that, the Court finds that Mr. Larson, who was represented by Counsel with whom he is satisfied, has

acknowledged a factual basis for his plea. I find that Mr. Larson has been fully advised of his rights in writing and by the Court.

I find that Mr. Larson is competent and capable of entering an informed plea and that he is aware of the nature of the charge and the consequences of his plea. I further find that Mr. Larson has discussed his plea agreement with his attorney and has signed and agreed to the plea agreement voluntarily, knowingly and intelligently.

It is, therefore, ordered that the plea is accepted, and the defendant is now adjudged guilty of -- of Count 1 of the indictment, charging a violation of Title 18, United States Code § 875(c), interstate communication of threat.

Mr. Larson, you're now referred to the probation department for a presentence investigation report. Your sentencing hearing will not occur for several months. Before the sentencing hearing, a probation officer will talk with you and gather information that will be included in a report that I will review for purposes of determining whether to accept the plea agreement.

When you speak with the probation officer, your attorney and your guardian may be present with you, if you wish. At the sentencing hearing itself, I may hear further statements or argument from both your attorney and the attorney for the Government.

You will also be allowed to make your own personal statement to me on your own behalf before I impose a sentence. That's only if you wish to do so. If you do not wish to speak, I certainly wouldn't hold it against you, but if you do wish to speak, I will listen very carefully.

All right, Counsel. A sentencing hearing has been set for July 21, 2026, at 1 o'clock p.m.

Does that work for all Counsel?

MR. MOCK: Yes, Your Honor.

MR. FEILER: Yes, Your Honor.

THE COURT: All dates other than the sentencing date are vacated.

Counsel, you are ordered to file any sentencing positions at least 14 days before the sentencing date. Any responses or objections to such filings must be filed no later than seven days before the sentencing date.

All right. If Counsel could please approach sidebar.

(Sidebar discussion was held as follows:)

THE COURT: Mr. Feiler, I don't know if you know who all the young people in the courtroom are, but I am concerned that there have been calls made to the facility and other harassments and/or threats made to Mr. Larson. This concerns and troubles the Court greatly.

MR. FEILER: Mm-hmm.

THE COURT: I intend to make a statement that I will

ask the Bureau of Prisons to notify both Counsel and the Court of any such attempts to contact Mr. Larson for the purposes of harassing or threatening him in any way and that the Court will take a very stern view of any such attempts.

Is there any objection?

MR. FEILER: None.

MR. MOCK: None.

Your Honor, while we're here, I may have misheard, but I believe Mr. Larson pled to Count 6. I thought I heard the Court say --

MR. FEILER: Count.

MR. MOCK: -- Count 1.

THE COURT: Oh. Did I?

MR. FEILER: Yeah.

THE COURT: My apologies.

All right. I will clarify that for the record.

MR. MOCK: Thank you, Your Honor.

(Sidebar discussion concluded.)

THE COURT: All right, Counsel. On sidebar, it was brought to my attention that I may have misstated. It is to be clear that Mr. Larson has pled guilty and is now adjudged guilty of violation of Count 6 of the indictment. I believe I may have said Count 1. He is not pleading guilty to Count 1. He is pleading guilty to Count 6.

Further, the Court will make a note that it has been

advised that there have been contacts to the Bureau of Prisons and other facilities in which Mr. Larson had been housed. I'm also aware of letters and/or contacts of a harassing nature to Mr. Larson.

This Court will note that it is very concerned about any such attempts to contact or threaten, harass or anything of that nature Mr. Larson. Therefore, I am instructing the Bureau of Prisons and the United State Marshals Office to notify this Court and both Counsel for the United States Attorney's Office and Mr. Feiler imminently and immediately if any such contacts are received by the Bureau of Prisons and/or Mr. Larson directly or Mr. Feiler, his Counsel. This Court takes a very dim view and will deal with them sternly should any such contacts occur.

All right. Is there any further business by either the Government or the defendant?

MR. MOCK: Nothing further from the Government, Your Honor.

MR. FEILER: Nothing further by the defendant, Your Honor.

THE COURT: All right. The defendant is remanded to the custody of the United State Marshal pending sentencing.

I will see you back in July, Mr. Larson. I wish you well, and the Court will be in recess.

(The proceedings concluded at 3:39 p.m.)

COURT REPORTER'S CERTIFICATE

I, JESSICA N. ANDERSON, Registered Merit Reporter, Federal Certified Realtime Reporter, in my capacity as Official Court Reporter for the United Stated District Court, District of Colorado, do hereby certify that I recorded the foregoing proceedings in stenographic shorthand at the time and place aforementioned and that I thereafter reduced said shorthand notes to transcription form. The foregoing transcript constitutes a true and complete record of the proceedings to the best of my knowledge and belief.

Dated this 20th day of April, 2026.

/s/ Jessica Anderson
**Jessica Anderson, RMR, FCRR**